# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

JENNIFER A. CARTE,

                Plaintiff,

v.                                            CIVIL ACTION NO. 3:08-1004

LOFT PAINTING COMPANY, INC.,
an Ohio Corporation, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are several motions: (1) Defendant Vector Technologies, Ltd.'s Motion to Dismiss the Plaintiff Jennifer A. Carte's Amended Complaint [doc. 25]; (2) Defendant Vector Technologies, Ltd.'s Motion to Dismiss Cross-Claim of Defendant Loft Painting Company, Inc. [doc. 30]; (3) Defendant Vector Technologies, Ltd.'s Motion to Dismiss Cross-Claim of American Electric Power Service Corporation [doc. 31]; and (4) Defendant American Electric Power Service Corporation's Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a)[1] [docs. 28, 33].

For the following reasons, the Court **HOLDS IN ABEYANCE** the Motions to Dismiss filed by Vector Technologies, Ltd. [docs. 25, 30, 31], and **GRANTS** Defendant American Electric Power Service Corporation's Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a) [docs. 28, 33] and **TRANSFERS** this action to the United States District Court for the Southern District of Ohio, Eastern Division.

## I. FACTUAL ALLEGATIONS

---

[1] Defendant Loft Painting Co., Inc. joins in this motion [doc. 33].

According to the Amended Complaint, Plaintiff Jennifer A. Carte was seriously injured on August 23, 2007, while she was working in Brilliant, Ohio at the Cardinal Power Plant.[2] Plaintiff asserts that she was employed by Defendant Loft Painting Company, Inc. (Loft), which is an industrial painting and sandblasting contractor, and she was working at the Cardinal Plant pursuant to a maintenance contract with Defendant American Electric Power Service Corporation (AEPSC). Plaintiff claims her injuries occurred when she was inside an above-ground tank vacuuming sandblasted material and other debris with a high pressure industrial vacuum, which was manufactured by Defendant Vector Technologies, Ltd. (Vector).

Plaintiff states that her right arm got sucked into the hose and was stuck for approximately fifteen minutes. After being extracted from the hose, Plaintiff was examined by an on-site nurse and transported to a nurse's station. A co-worker then drove Plaintiff from the Cardinal Plant in Brilliant, Ohio to a hospital in Steubenville, Ohio. From there, Plaintiff was life-flighted, via helicopter, to Allegheny General Hospital in Pittsburgh, Pennsylvania, where she received surgeries and treatment.

A day after the accident and while Plaintiff was in the hospital in Pennsylvania, she claims that a representative of Loft visited her and gave her a document entitled "Vector Vacuum Units Training Acknowledgment Form." Plaintiff asserts that Loft prepared the document with false

---

[2] Defendant American Electric Power Service Corporation (AEPSC) disputes Plaintiff's assertion that it owns the Cardinal Power Plant. AEPSC maintains that it is a service company created to comply with the Public Utility Holding Company Act of 1935, and it provides services to the electric utility companies of American Electric Power Company, Inc. In its role at Cardinal Plant, AEPSC states that it provides administrative, engineering and other services to Cardinal Operating Company, who operates Cardinal Plant. For purposes of this Order, however, the Court need not decide whether or not AEPSC owns the plant, because the transfer analysis does not hinge on this fact.

information and altered dates and asked her to sign it. Plaintiff states that her mother signed the document and it was designed to induce Plaintiff to surrender her legal rights.

Approximately one year after the accident, Plaintiff claims that Loft hired her to work at the Clifty Creek power plant located in Madison, Indiana. Plaintiff asserts she was told that it would be a long-term job assignment. According to the Plaintiff, the project manager at the Clifty Creek plant was AEPSC. Plaintiff reported to work in Indiana on or about August 20, 2008, and completed a site-specific orientation. The next day, Plaintiff was laid off of work. Plaintiff states she was laid off because she recently filed a lawsuit against Loft and AEPSC.

These factual allegations have led Plaintiff to assert eight counts in her Amended Complaint. In Count I, Plaintiffs claims that Loft, an Ohio corporation, deliberately intended to cause the injuries in violation of W.Va. Code § 23-4-2. Even though the alleged underlying injuries occurred in Ohio, Plaintiff asserts that Loft is subject to the West Virginia Workers' Compensation Statute because Loft filed the Plaintiff's workers' compensation claim in West Virginia.

The Plaintiff further alleges, in Counts II and III, that AEPSC, also an Ohio business,[3] is liable for a violation of a West Virginia safety statute, W.Va. Code § 21-3-1 *et seq.*, and bears premises liability for its actions at the Cardinal Plant in Brilliant, Ohio the day of the alleged injury. Counts IV and V are allegations of strict liability or negligence for manufacturing or design defects and strict liability or negligence for failure to warn against Vector, the Wisconsin corporation which sold the industrial vacuum to Loft in Ohio.

---

[3] Plaintiff asserts AEPSC is an Ohio corporation with its principal place of business in Columbus, Ohio. AEPSC, however, claims it is a New York corporation with its principal place of business in Columbus, Ohio. This dispute does not change the fact that AEPSC is an Ohio business.

The remaining counts, VI, VII and VIII, are against Loft for alleged fraud, wrongful discharge in violation of public policy, and outrage/intentional infliction of emotional distress. The Plaintiff alleges the fraud occurred in a Pennsylvania hospital when a Loft representative asked her to sign the "Vector Vacuum Units Training Acknowledgment Form." As a result of this alleged fraud, the Plaintiff asserts she has suffered emotional distress in West Virginia, her state of residence. Additionally, the Plaintiff asserts she also suffered emotional distress as a result of Loft allegedly wrongfully discharging her from a job in Indiana in violation of public policy.

## II. DISCUSSION

### A. Change of Venue

**1. Legal Standard**

Defendant AEPSC filed a motion to transfer venue to the United States District Court for Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or district where it might have been brought."

When evaluating a motion to transfer, the district court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Thus, district court judges have discretion under 28 U.S.C. § 1404(a) when making decisions to transfer a case. *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991). Seven factors are commonly considered by this Court when ruling on transfer motions: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *AFA Enters., Inc. v.*

*Am. States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W. Va. 1994). It is under this direction that the Court must analyze the issue.

### 2. *AFA* Factors

There is little doubt that Ohio's connection to this case is substantial. On the day of the injury, Plaintiff was working at an Ohio power plant for her Ohio employer, Loft, pursuant to a maintenance contract with AEPSC, an Ohio business. The underlying injuries that brought about this lawsuit occurred at this power plant in Ohio. Two of the three defendants, Loft and AEPSC, are Ohio-based businesses. The other defendant, Vector, sold the industrial vacuum that allegedly injured the Plaintiff to Loft in Ohio. Plaintiff was initially treated by a nurse at Cardinal Plant, and then at a hospital in Ohio before being flown to Pennsylvania for further treatment. Consideration of the enumerated *AFA* factors listed above, when coupled with the facts of this case, convinces the Court that this case could have been brought in the Southern District of Ohio,[4] and that that district is indeed a more appropriate venue than this one.

Ohio serves as the most convenient location for all the parties involved for at least five of the eight counts in the Amended Complaint. Plaintiff alleges deliberate intention to injure, violation of a safety statute,[5] premises liability, strict liability or negligence for manufacturing or design defects, and strict liability or negligence for failure to warn. The other claims, fraud, wrongful

---

[4] Plaintiff's alleged injury occurred in Brilliant, Ohio, which is located in Jefferson County, Ohio. The Southern District of Ohio, Eastern Division, has jurisdiction over matters occurring in Jefferson County.

[5] Plaintiff argues the deliberate intention and safety violation claims fall under West Virginia law. However, this Court is not in a position to decide choice of law issues at this time for the purposes of transferring the case based on convenience. Regardless of which state's law applies, the majority of the sources of proof and witnesses still remain in Ohio.

discharge, and intentional infliction of emotional distress arguably have ties to Pennsylvania, Ohio, Indiana, and possibly West Virginia. When analyzing the case as a whole, it is clear that justice would best be served by maintaining the action in Ohio, the hub of the majority of the sources of proof, parties, and witnesses.

The first *AFA* factor, ease of sources of proof, tilts heavily toward Ohio. Because the underlying injury occurred in Ohio, a substantial amount of evidence from Ohio will be relied upon for the first five counts, all of which arise directly from the initial injury at Cardinal Plant in Brilliant, Ohio. Additionally, if there are sources of proof in the wrongful discharge claim, they will likely be found where employer Loft is located, Ohio. Understandably, transferring this case to Ohio will increase "ease of access to proof." *AFA Enters., Inc.*, 842 F. Supp. at 909.

*AFA* factors (2) through (4) also favor Ohio. Again, the place of the underlying injury is key to this determination, as the bulk of the witnesses will be in Ohio, including a fellow Loft employee who was working with the Plaintiff at the time of the accident. Ohio is a more convenient location for witnesses in this case to appear, because the majority of witnesses reside in Ohio within the Southern District's subpoena power. As AEPSC points out in its reply brief, in addition to the only individual working inside the tank with the Plaintiff, several key Loft employees, AEPSC safety coordinators, and medical professionals who could be called to testify in this case reside in Ohio.[6] These facts are important when analyzing the convenience and costs for witnesses, as well as the compulsory process.

---

[6] Plaintiff has informed the Court of at least two witnesses with West Virginia residences, her mother and the Loft representative who presented her with the "Vector Vacuum Units Training Acknowledgment Form."

If a view of the Cardinal Plant, or the tank Plaintiff was working in at the time of the accident is needed, Brilliant, Ohio would serve as that location,[7] particularly for the premises liability claim.[8] Thus, factor (5) - the possibility of a view - points toward Ohio.

The final two factors, (6) the interest in having local controversies decided at home and (7) the interests of justice, also direct this Court to transfer the case to Ohio. At the heart of the matter, this case involves a West Virginia resident getting injured while working in Ohio on behalf of two Ohio companies by an industrial vacuum purchased and used from a Wisconsin company in Ohio. The state of Ohio's substantial interest in this case cannot be downplayed.

It is important to stress that a plaintiff's choice of forum is to be given considerable weight, and a transfer motion must be denied "if it would merely shift the inconvenience from the defendant to the plaintiff." *AFA Enters., Inc.*, 842 F. Supp. at 909. However, the inconvenience is not merely shifted from the Defendants to the Plaintiff in this case. Before the accident, the Plaintiff was a West Virginia resident working for an Ohio employer in Ohio. It is no more inconvenient for the Plaintiff to bring this action in Ohio than it was for her to work for Loft in Ohio. Moreover, transferring this case to Ohio will provide all the parties, including the Plaintiff, with better access to witnesses and sources of proof because the material facts occurred in Ohio. The overall "convenience of the parties, a critical consideration, will be enhanced by the transfer." *Id.* Thus, the movants, AEPSC

---

[7] Brilliant, Ohio is approximately 266 miles from the Huntington, W.Va., where this case is currently being adjudicated.

[8] There appears to be a dispute as to the role AEPSC actually played at the Cardinal Plant, and it is unclear whether other entities were involved. If proof regarding this dispute can be found, it will come from the plant in Ohio.

and Loft, have met their burden of demonstrating that this case should be transferred for the convenience of the parties and in the interests of justice.

Therefore, the Court grants the motion to transfer the case to the Southern District of Ohio, Eastern Division.

### B. Motions to Dismiss

The lone issue remaining in this case is the disposition of Vector's three motions to dismiss. Vector's argument is two fold. First, it argues all counts against it must be dismissed for improper venue and lack of personal jurisdiction. This issue need not be addressed because the Court has decided to transfer the case to the Southern District of Ohio. Therefore, the Court need not rule on the jurisdictional arguments presented by Vector. The Court must defer any future jurisdiction arguments by Vector to the transferee court, which sits in the state where Vector's industrial vacuum was delivered and used.

Additionally, in a reply to AEPSC's transfer motion, Vector asserted that the Court cannot transfer a case if it lacks personal jurisdiction over the defendant. Even if this Court were to assume, *for the sake of argument*, that Vector was not subject to personal jurisdiction by this Court, the Court nonetheless has authority to transfer the case without dismissing Vector from the suit. As explained in *Teets v. Hawker*, 278 F. Supp. 834 (N.D. W. Va. 1968), regardless of "whether or not the trial court below had personal jurisdiction over the defendant," the case should be transferred "for the 'convenience of the parties and witnesses' and 'in the interest of justice'. . ." *Id.* at 837 (quoting *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297-98 (5th Cir. 1964)).

This proposition has also been adopted by another district court within the Fourth Circuit. *See Datasouth Computer Corp. v. Three Dimensional Tech., Inc.*, 719 F. Supp. 446 (W.D.N.C.

1989) ("Although this Court may not have personal jurisdiction over 3D, it still has the power to transfer the action to another district pursuant to Section 1404(a)"). The Fourth Circuit has not addressed the issue directly, but the *Teets* and *Datasouth* courts both interpreted Fourth Circuit and United States Supreme Court case law to reach their respective decisions.

Vector has not presented the Court with any authority that would suggest an alternative outcome, other than the blanket statement that it "is not subject to the jurisdiction of this Court in this matter and, therefore, would not be subject to transfer." *Response of Vector Technologies, Ltd., to American Electric Power Service Corporation's Motion for Change of Venue*, at p. 1. This lone assertion is not enough to overcome the authority cited herein.

Therefore, this Court holds Vector's motions to dismiss in abeyance, and finds that it is proper to transfer the case – including Vector – to the Southern District of Ohio.

### III. CONCLUSION

For the reasons set forth above, the Court **HOLDS IN ABEYANCE** the Motions to Dismiss filed by Vector [docs. 25, 30, 31], and **GRANTS** Defendant AEPSC's Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a) [docs. 28, 33] and **TRANSFERS** this action to the United States District Court for the Southern District of Ohio, Eastern Division.

ENTER: March 6, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE