IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JENNIFER A. CARTE,

    **Plaintiff,**

    v.

LOFT PAINTING CO., INC., et al.,

    **Defendants.**

Case No. 2:09-cv-178
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's motion *in limine* or, in the alternative, a motion for leave to file an amended complaint (Doc. # 152), Plaintiff's memorandum in support of the motion (Doc. # 153), Defendants' memoranda in opposition (Docs. # 168, 169, 170), and Plaintiff's reply memoranda (Docs. # 175, 176, 177). For the reasons that follow, this Court finds the motion *in limine* well taken insofar as it successfully requests a ruling on what state's substantive law applies to the claims involved in this litigation, but for the reasons that follow, the Court at times disagrees with the analysis and conclusions proposed in the motion. The Court also finds the contingent request for leave to file an amended pleading well taken, which prompts adjustment both of how the Court shall address motions for summary judgment and of the remaining case schedule.

### I. Background

The asserted facts underlying this litigation are as follows. Defendant American Electric Power Service Corporation ("AEPSC"), an Ohio corporation, allegedly hired Defendant Black & Veatch Construction, Inc. ("Black & Veatch"), a Missouri corporation, to perform various work at AEPSC facilities. Black & Veatch allegedly subcontracted some of this work to Defendant

Fisher Tank Company ("Fisher Tank"), a Pennsylvania corporation, which in turn allegedly subcontracted a portion of the work to Defendant Loft Painting Company, Inc. ("Loft"), an Ohio corporation. Loft employed Plaintiff, West Virginia resident Jennifer A. Carte, to perform work at various industrial sites throughout West Virginia, Pennsylvania, and Ohio.

On August 23, 2007, while Plaintiff was vacuuming sandblasted material in a bulk storage tank at an AEPSC plant located in Ohio, her right arm was sucked into a high-pressure industrial vacuum. Plaintiff sustained an injury and was subsequently transferred to a nearby Ohio hospital. From there, Plaintiff was flown to a Pennsylvania hospital. While in the Pennsylvania hospital, Plaintiff asserts, a Loft employee visited her and procured her signature on a document titled "Vector Vacuum Units Training Acknowledgment Form."[1] Plaintiff asserts that Loft engaged in deception and fraud surrounding the document, including altering dates, and that the document has the effect of surrendering a number of Plaintiff's legal rights.

Plaintiff subsequently filed suit in the United States District Court for the Southern District of West Virginia in August 2008. (Doc. # 1.) That same month, Plaintiff reported to a power plant located in Madison, Indiana, where she was to perform work for Loft. A Loft manager informed Plaintiff that she was being laid off, however, and allegedly later informed her that she was not permitted to work because of the lawsuit. Plaintiff amended her complaint to include a claim for relief targeting this allegedly retaliatory conduct. (Doc. # 6.)

The action was transferred to this Court pursuant to 28 U.S.C. § 1404(a) (Doc. # 58), and

---

[1] Vector Technologies, Ltd. ("Vector") manufactures the vacuum Plaintiff was using when injured and is no longer a party to this litigation.

2

Plaintiff eventually filed another amended complaint (Doc. # 76).[2] A period of additional pleading and discovery followed. On the day before the deadline for filing summary judgment motions, Plaintiff filed a document styled as a motion *in limine* that asks this Court to issue a decision on what state substantive law applies to each of her claims. (Doc. # 152.) In the event that this Court disagrees with Plaintiff that West Virginia law applies to all of her claims, Plaintiff alternatively requests that the Court grant her leave to amend her pleading to bring her claims "in line with Ohio law," the only other state that Plaintiff acknowledges in her motion as potentially applicable. (Doc. # 152, at 1.)

## II. Discussion

Plaintiff and Defendants disagree on the correct choice of law analysis. In summary, Plaintiff posits that Ohio's choice of law rules apply and that, under that state's rules, West Virginia substantive law controls all of her claims. Defendants disagree and argue that the choice of law rules of the transferring court's forum state control. Therefore, Defendants reason, West Virginia choice of law rules dictate that Ohio substantive law ultimately governs the entirety of Plaintiff's claims. Even if Ohio's choice of law rules were to apply, Defendants alternatively reason, Ohio substantive law still controls Plaintiff's claims. Defendants have thus moved for summary judgment applying Ohio law.

Given the procedural history of this litigation, the Court starts with the principle that, "following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court." *Ferens v. John Deere Co.*, 494

---

[2] Notably, the transferring district court judge expressly indicated that he was not opining on choice of law issues. (Doc. # 58, at 5 n.5.)

3

U.S. 516, 519 (1990). Therefore, this Court is obligated to apply the state choice of law rules that the transferor court, the United States District Court for the Southern District of West Virginia, would have applied had there been no transfer. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 864 (6th Cir. 2006). *See also Polydyne, Inc. v. Kirk*, 238 F.3d 423, 2000 WL 1888654, at *2 (6th Cir. 2000) (unpublished table decision) ("When a diversity case is transferred from one federal court to another, the transferee court applies the same laws that the original court would have applied."). In other words, this Court is required to proceed as though West Virginia were the forum state and must look to that state's choice of law rules to determine which state's substantive law applies in this litigation. *See Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 215 (6th Cir. 1989). The parties' considerable debate regarding the nuances of Ohio's choice of law rules is thus academic and does not warrant a discussion on the merits here.

West Virginia's choice of law rules in tort cases traditionally adhere to the doctrine of *lex loci delicti*, which "provides that the rights of the parties are governed by the law of the place of injury." *In re OnStar Contract Litig.*, No. 2:07-MDL-01867, 2010 WL 3516691, at *11 (E.D. Mich. Aug. 25, 2010); *State of W. Virginia ex rel. Chemtall Inc. v. Madden*, 216 W.Va. 443, 450-51, 607 S.E.2d 772, 779-80 (2004). The Court shall therefore examine each of the claims set forth in Plaintiff's Second Amended Complaint to ascertain the site of the alleged tortious activity. As discussed below, where the alleged wrongs took place will control the substantive law that govern each claim.

**Count I.** In her first claim for relief, Plaintiff asserts a statutory claim under West Virginia Code § 23-4-2 *et seq.* The focus of this claim, however, is on the performance of work

4

done by Plaintiff in Ohio in relation to Loft's conduct "[o]n or about August 23, 2007." (Doc. # 76 ¶¶ 40-43.) Ohio law applies to such conduct, presenting the sort of conflict that Plaintiff seeks to remedy in her alternative request to amend her pleading, which this Court shall discuss below.

**Count II.** Plaintiff asserts a negligence claim against AEPSC, Black & Veatch, and Fisher Tank in her second claim. At the core of this claim is the conduct involved in the vacuum incident, which took place in Ohio. Ohio law applies.

**Count III.** Plaintiff next asserts a common law premises liability claim against AEPSC involving the Ohio plant. Ohio law applies.

**Counts IV and V.** In her fourth and fifth claims, Plaintiff asserted claims against Vector. This Court approved Plaintiff's dropping Vector as a party to this action in its July 16, 2010 Order. (Doc. # 190.) Accordingly, there is no need to present a choice of law analysis in regard to these dismissed claims.

**Count VI.** Plaintiff asserts a claim of fraud against Loft in her sixth claim for relief. The purported facts giving rise to this claim are that while Plaintiff was in the Pennsylvania hospital receiving treatment for her injuries, a Loft employee engaged in fraud by procuring her signature on a back-dated document that had the effect of surrendering a number of Plaintiff's legal rights. The alleged wrong took place in Pennsylvania, even if the resulting ramifications of that asserted wrong spilled over into West Virginia. *Cf. Milton v. IIT Research Inst.*, 138 F.3d 519, 522 (4th Cir. 1998) (applying Virginia choice of law analysis in which the law of the state in which the wrongful act took place controls, regardless of wherever else the effects of that act are felt); *Jordan v. Shaw Indus., Inc.*, 131 F.3d 134, 1997 WL 734029, at *3 (4th Cir. 1997) (unpublished

5

table decision) (explaining that under a *lex loci delicti* analysis, the substantive law of the state in which the last act giving rise to a fraud claim occurred applies and noting that "[t]he 'last act' necessary for a fraud claim is the reasonable reliance on the false representation which causes the injury"). This is because the last act occurred when Plaintiff purportedly signed the document at the hospital, thereby sustaining injury in the form of a loss. *Witt v. Am. Trucking Ass'ns, Inc.*, 860 F. Supp. 295(D.S.C. 1994) ("In a fraud action, . . . the wrong occurs not where the alleged misrepresentations were made, but where the plaintiff suffers a loss."); *Bailey v. Chattem, Inc.*, 684 F.2d 386, 393 (6th Cir. 1982) (applying *lex loci delicti* rule in recognizing that because a loss occurred when a party relied on a misrepresentation to his detriment by assigning his rights, the law of the state in which the assignment was made controlled). Pennsylvania law therefore applies here. *Cf. Boginis v. Marriott Ownership Resorts, Inc.*, 57 F.3d 1065, 1995 WL 339054, at *3 (4th Cir. 1995) (unpublished table decision) (applying Virginia choice of law rules and holding that under the *lex loci delicti* doctrine, the substantive law of the state in which fraud occurred controls); *Dawkins v. State*, 306 S.C. 391, 392, 412 S.E.2d 407, 408 (1991) (applying *lex loci delicti* and concluding that tort claim arose under the law where the injury was inflicted). The Court notes that this conclusion rejects Loft's incorporated argument that one choice of law analysis (West Virginia) leads to another choice of law analysis (Pennsylvania) that would lead to reliance on Ohio substantive law, a theory that Loft discusses in regard to Count VII and which this Court discusses more fully below.

**Count VII.** In her seventh claim, Plaintiff targets Loft's alleged refusal to employ Plaintiff on the Clifty Creek project because she had filed this lawsuit her employer. The call terminating Plaintiff's employment allegedly came from Ohio, and Plaintiff received after

6

having reported for work in Madison, Indiana. Indiana law therefore applies to this wrongful discharge in violation of public policy claim, even if, similar to claim six, the effects of this purported tort continued into West Virginia. *Cf. State of W. Virginia ex rel. Chemtall Inc.*, 216 W.Va. at 451, 607 S.E.2d at 780 (applying substantive law of state in which tort occurred, despite residency of plaintiffs)**;** *Milton*, 138 F.3d at 522 (rejecting under *lex loci delicti* analysis a plaintiff's domicile state as providing substantive law for a claim in favor of the state in which the plaintiff's termination of employment occurred). The Court recognizes that Loft argues that Ohio law should apply because, under Indiana choice of law rules, Ohio is the state with the most significant relationship. This argument goes too far, however, because it relies on West Virginia choice of law rules to make Indiana law relevant, then uses Indiana choice of law rules to turn the claim to Ohio law. The Court disagrees with the invocation of such stacking or a multiple choice of law analysis that would work to substitute Indiana choice of law rules for the choice of law rules that govern the forum in which this litigation originated.

**Count VIII.** Plaintiff targets two incidents in her eighth claim for the intentional infliction of emotional distress, which she asserts against only Loft. One portion of her claim arises from the company's alleged actions involving the form Plaintiff signed in the Pennsylvania hospital, while the other portion of the claim involves Plaintiff not being permitted to work on the Clifty Creek project in Indiana. Under the mandated West Virginia choice of law analysis applying the *lex loci delicti* doctrine and based upon the rationale discussed above, Pennsylvania law applies to that part of the claim involving the former incident and Indiana law applies to that part of the claim involving the latter incident. This conclusion again rejects Loft's argument that one choice of law analysis leads to another choice of law analysis that would lead

to Ohio. Loft's proposed stacking of choice of law analyses is without precedential support.

The end result of the foregoing analysis is that no party has correctly identified the substantive law that applies in regard to each claim. Plaintiff argues for West Virginia law, while Defendants argue for Ohio law. But only claims one, two, and three involve Ohio law, while claim six and part of claim eight involve Pennsylvania law, and claims even and part of claim eight involve Indiana law. This leads to two issues.

First, Plaintiff has asked that if this Court determines that Ohio law applies, the Court then permit her to amend her pleading to bring her complaint into accordance with Ohio law. Instead of attaching a proffered Third Amended Complaint to her motion, Plaintiff waited until her reply memoranda to submit the proposed pleading. AEPSC, Black & Veatch, and Fisher Tank oppose amendment on various grounds, including the grounds that discovery has closed, that the parties have filed fully briefed summary judgment motions, and that the case has been pending in this District alone since March 2009. Loft does not oppose amendment, but requests that it be permitted to respond to any such amendment.

Second, today's choice of law analysis injects some disarray into review of the pending summary judgment motions, which would target a replaced pleading. Additional review of those motions reveals that the summary judgment briefing is at times a mess. AEPSC argues Ohio law in moving for summary judgment on Counts II and III. Black & Veatch and Fisher Tank argue Ohio law in moving for summary judgment on Count II, relying in part on a transcript of Plaintiff's deposition that lacks the requisite court reporter certification to constitute summary judgment evidence. Loft fares less well in its briefing, moving for summary judgment on Counts I, VII, and VIII and apparently arguing West Virginia law, Ohio law, and Ohio law, in regard to

the respective claims. Curiously, Loft filed its motion for summary judgment on May 21, 2010 (Doc. # 164), followed by a memorandum in support of the motion on May 22, 2010 (Doc. # 165), followed by what appears to be the same memorandum in support of the motion on May 24, 2010 (Doc. # 166). This contravenes the Local Civil Rules. *See* S. D. Ohio Civ. R. 7.2(a)(1). Should the Court permit amendment, an act that would aid Plaintiff, equitable considerations weigh in favor of permitting various defendants to correct or rework their summary judgment briefing and evidentiary submissions. And because the Court has not analyzed each line of every summary judgment filing and has not yet considered each piece of evidence filed, the Court recognizes that if it affords one or more defendants the opportunity to redo their summary judgment work, equity also demands that the Court extend such an order to all defendants.

The end result of these two issues is that the Court must decide whether to permit amendment and, if amendment occurs, what consequent effect, if any, amendment should have on the pending summary judgment motions (some of which address inapplicable law or rely on deficient evidence that this Court cannot consider in its current form). Federal Rule of Civil Procedure 15 (a)(2) permits a court to grant leave to amend and instructs that "[t]he court should freely give leave when justice so requires." In exercising such discretion, this Court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

There is no evidence of bad faith or dilatory motive on Plaintiff's part here. Arguably, there is perhaps some undue delay resulting primarily from what appears to be sloppy practice

manifested in the assertion of claims under incorrect substantive law. But there is little if any prejudice to Defendants–not all of whom oppose amendment–and any such prejudice would be minimized even further by permitting them to file new summary judgment motions (or to simply re-file the prior motions). Permitting amendment and then allowing the filing of new summary judgment motions with the chance to correct deficiencies in the submitted summary judgment evidence would in fact actually benefit select defendants. It would make little sense to proceed on flawed pleading when a party tried to address potential issues in that pleading and select summary judgment briefing related to that pleading are themselves troubled. In other words, justice and a fundamental desire to resolve disputes on their merits compel this Court to afford the parties a mulligan on their pleading and summary judgment work. Although a close call, this Court concludes that Plaintiff has demonstrated good cause under Federal Rule of Civil Procedure 16(b)(4) and sufficient reasons for granting leave to amend under Rule 15(a)(2). The Court also concludes that fairness dictates that the Court allow the parties to correct or adjust their summary judgment work to address the results of the amended pleading.

### III. Conclusion

For the reasons stated above, this Court **ORDERS**:

(1) The Court **VACATES** the remainder of the case schedule.

(2) The Court **GRANTS** Plaintiff's motion *in limine* to the extent it seeks a determination of what state's substantive law applies to Plaintiff's remaining claims. (Doc. # 152.)

(3) The Court **GRANTS** Plaintiff's contingent request for leave to file a third amended complaint. Said pleading should remedy the incorrect designation of the asserted claims, but should not present new claims necessitating additional discovery.

(4) The Court **DENIES WITHOUT PREJUDICE** the pending motions for summary judgment. (Docs. # 155, 161, 162, 164.)

(5) Plaintiff shall file a Third Amended Complaint by November 22, 2010. The Court declines to accept the proffered amended complaint that Plaintiff has submitted because it treats all of her claims as governed by Ohio law.

(6) Defendants shall file responsive pleadings (including any cross-claims, which must be re-asserted) by December 6, 2010. Any answer in response to any asserted cross-claims shall be filed by December 20, 2010.

(7) By January 10, 2011, the parties shall file summary judgment motions. The parties may elect to re-file their prior motions, but they are advised to ensure that they have addressed the correct substantive law, that they have relied upon proper summary judgment evidence that this Court can consider, and that they have complied with all applicable rules.

(8) The Court sets a non-oral hearing on all dispositive motions for February 25, 2011.

(9) The final pretrial conference shall be held on May 25, 2011, at 12:00 p.m. in chambers.

(10) The jury trial shall commence on Tuesday, July 5, 2011, at 9:00 a.m.

**IT IS SO ORDERED.**

                                        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE